Braun v. America-CV Station Group. Okay, Mr. Palumbis. Good morning, Your Honors. It may please the Court, Robert Palumbis on behalf of the appellants, who are collectively known as the Bagasso Equity Holders. The appellants are here challenging the modification of a plan of reorganization that stripped them of two-thirds of the ownership interest in the reorganized debtors and instead gave sole ownership in the debtors to the debtor's CEO. The bankruptcy court lacked statutory authority to grant that modification. First, the debtors didn't make a new disclosure for the modified plan, and as a result they needed to proceed with the requirements of Rule 3019. Here, those requirements were not satisfied. Second, the debtors didn't even serve the motion to modify on the Bagasso Equity Holders. Yeah, the statute you cite about that is it deals with post-confirmation modification, right? So it seems like if you've got a due process argument, it's got to be a constitutional due process argument because it looks like the statute doesn't apply to pre-modification. Well, Your Honor, we've raised a constitutional due process argument as well as the code argument. Then it seems to me your problem is you had actual notice. We didn't have actual notice of the motion to modify. That's the point of this. You had actual notice about that hearing, I thought. We had notice of the confirmation hearing, no notice that there was a motion to modify that was being presented at the confirmation hearing, and that's the key point here. There was a course of communications between the debtors and the Bagasso Equity Holders where issues around the funding had been raised. At no time was the motion to modify provided to the Bagasso Equity Holders during that communications. In fact, the last communications that the debtor had with the Bagasso Equity Holders the day before the confirmation hearing was that we would work to try to work this out, not that the debtors were walking in the next day to modify the plan and strip the two-thirds equity ownership interest from the Bagasso Equity Holders. That was never communicated to the Bagasso Equity Holders. Let me get to a bottom line concern I have. It seems to me any error here was harmless because what the bankruptcy court did was it treated the Bagasso Equity Holders as having rejected the plans and then required the debtors to confirm the plans with a cram down of Class III equity interest holders. And you don't challenge that, that decision of the bankruptcy court to cram down. And so even if you were given a right to revote, nothing would change. Your Honor, we disagree with that proposition, but let me take it in three parts. First of all, the debtors deemed Class III to have rejected the plan. And if there's a revote, that's what you would do, right? The second part of my sentence is they did so in contravention of Rule 1126G. 1126G allows the debtors to do that where no property is being given on account of the class members' pre-petition ownership. And here, there was property being given on account of the Class III membership. That was the exclusive right to put up money, put up new money, and obtain new equity. We've cited the North LaSalle Street Partnership case from the U.S. Supreme Court where the court held that that exact situation is a property interest on account of the pre-petition equity. So the deemed rejection argument was invalid under the statute. But I take Your Honor's point, even if it was invalid, it was how the bankruptcy court proceeded. The reason it's not harmless is because the requirement of disclosure and service doesn't just protect the right to vote. It also protected the Pagasso equity holder's right to argue in person at the hearing that the modification shouldn't be granted and, to the point about the cram-down, that in fact the modified plan could not have been confirmed. Because what happened was, by modifying the plan in the way that the debtors did, it treated members of Class III differently. There was a disparate treatment of Mr. Visayo, the CEO, as compared to the other three members, the Pagasso equity holders. And that made the plan unconfirmable under 1123A4 and under a cram-down analysis. No one made that argument to the bankruptcy court because they weren't aware of the modification. Correct, Your Honor. That is the crux. Had we been aware of the modification, the Pagasso equity holders would have attended the hearing. First they would have argued that the entire basis for the modification was flawed. There was a deadline for funding, the new equity funding and the loan, in the plans. And that deadline was, at the earliest, the effective date. That was what the plan said. The debtors moved that date up arbitrarily and declared what was, in essence, a default by the Pagasso equity holders. But there was no basis in the plans for that. And the bankruptcy court held that, well, the basis was in its own orders. As we've argued, that's not true, Your Honor. The bankruptcy court never ordered that all the money had to be put up earlier than what was required by the plan. So there was no attendance at that hearing because, from the Pagasso equity holders' perspective, there was nothing that could happen. Once we get to the hearing... Before the hearing, there were e-mails sent by your clients, I guess the lawyers, saying, my client objects formally to any instruction given by Vassallo to modify the reorganization plan. I think there was another similar e-mail before the hearing. So isn't that actual notice? No, Your Honor. There was no... About the motion to modify? No, Your Honor. I mean, the language that the court just read is not talking about a motion to modify. It was talking about an instruction that appeared to be out there. The debtors never provided the motion to modify or alerted the Pagasso equity holders that a motion... Why does the e-mail refer to objecting to modification? It objected to any instruction. So even by the terms of that e-mail, what the equity holders were saying is, if there is an instruction like that, we object. We will object. It's not saying we know that a motion has been given, has been filed, that instruction has been given. At the very least, Judge Pryor, that is unclear, and there could be factual finding on the issue, but it's not enough to find actual notice.  And, of course, we have to review those findings for clear error. Another e-mail seems to me to be more specific, but maybe you can explain why it isn't, where it says, we want to make clear that any instruction sent by Carlos regarding the change of the reorganization plan and, more importantly, the assignment or redistribution of equity of the companies to Vassallo himself or his entities is improper. Isn't that talking about exactly what was in the motion to modify? Yes, Your Honor. But, once again, it's not talking with knowledge, with actual knowledge that the motion has been filed. That's the difference. So I understand Your Honor's point. There's clearly conversation going on at this point about whether this is... And there's an awareness there's going to be a hearing that they failed to attend. That's right. And then the e-mail that comes after that, Your Honors, is debtors' counsel saying to the Pagasso equity holders he wants to be helpful and they're going to try to work something out. That's how that e-mail correspondence the day before the confirmation hearing is left. That correspondence doesn't on its face suggest that the equity holders knew that a motion to modify had been filed. On that issue, the debtors failed in the basic requirement that they serve parties and interests. That's both a requirement under the bankruptcy code and a due process requirement. The equity holders clearly are a party and interest here because, under the original plan, they had an exclusive option to put up funding by the effective date and get new equity if they did so. They satisfied that requirement. They had, before the confirmation hearing, they had put up their money twice, by the way, because it had been alleged by the debtors that it went to the wrong bank account first, and they had also signed the lending agreement that was required ahead of the effective date as well. So all conditions had been satisfied at that point. I'd like to address one of the main arguments debtors make in response to what we think is a straightforward reading of 3019, which is that there is no, and Chief Judge Pryor, you raised this as well, that there's no standing to raise these arguments because the Pagasso equity holders were deemed to have rejected and they didn't vote to accept the original plan. Our position, which we've argued, is that, in fact, the equity holders are deemed to have accepted the original plan under the language of the debtor's own disclosure statement. The disclosure statement said that... But my concern was whether that mattered or not. Understood, Your Honor. Well, if there's no, I won't delve into that if the court doesn't have a question about that. Although I'll say I do have some concerns about whether the disclosure statement can alter the, essentially, statutory requirements for voting to accept or not accept a plan. Well, Your Honor, I don't think it does alter the requirements. It allows, I mean, the question here is what to do where, under the statute, there is no vote either way. And the statute doesn't address that issue. There is case law, which we've cited, where when the debtor pre-announces the effect of not voting on the plan, the court should give effect to that announcement. The point of the disclosure statement, Your Honor, is to tell the creditors and interest holders what's going to happen based on their vote or their non-vote, their yes vote or their no vote. And here, the debtors announced to the equity holders exactly what would happen if no one in the Class 3 voted, and that was that the plan would be deemed accepted by that class. But don't a lot of provisions of the Code talk about affirmative acceptance? There are certainly provisions that talk about that. That's not, that doesn't, isn't in 1126. That's not required as the only way to accept or reject a plan. And I would point, Your Honor, to 1126F and 1126G, both of which specifically provide for deemed acceptances and deemed rejections without a vote either way. So, clearly, the statute itself contemplates that you can accept or reject a plan without actually returning a vote. We're just providing that same proposition here where the debtor preannounces it. With respect to the disclosures, I think your adversary's argument is, excuse me, that they conflict with the plan, and the plan says that it controls. What's your response to that argument? They don't conflict with the plan, Your Honor. What the plan lays out is it's essentially parroting the statutory provisions that we were just discussing about how a plan can be accepted through an affirmative vote. That same language is also on the disclosure statement, on the same page that the disclosure statement provides for a result if no votes are given. There's no conflict between those two provisions because one is describing what will happen if votes are provided, meaning the vote will be accepted if, or the class will deem to have accepted if two-thirds vote in favor. And then there's another provision in the disclosure statement that we come with under where no votes are provided. And there's no conflict within the disclosure statement, and there's nothing that conflicts with that provision in the plan. Okay. Let's hear from Mr. Batista. Thank you, Your Honors. Good morning, and first, thank you for your time today. I very much appreciate it. May it please the Court, I'm Paul Batista, and I represent the four reorganized debtors in this case, and I was the Debtors Bankruptcy Counsel down below before Judge Kristol. I'm going to highlight three points for the Court from our brief and, of course, answer any questions that you have. Let me start with the issue of the alleged lack of notice. Bankruptcy Rule 3019 is very clear. Prior to confirmation of a plan, a plan can be modified by giving only three parties notice. One is a trustee, two is a committee, and three is any entity the Court designates. That is not the Pegasus Equity Holders. They were not entitled to notice under that procedural rule. Did they have actual notice? And is that clear from the record? Yes, Your Honor. I believe they did. And Judge Kristol actually was at Bankruptcy Court level. Judge Prior referenced the District Court. But Judge Kristol, in the memorandum opinion denying reconsideration of Paragraph 11, says, quote, the Pegasus Equity Holders admit that at some point prior to confirmation hearing, they were made aware of the motion to modify, though perhaps not the specific terms, because they admittedly requested debtors' counsel to seek a continuance of the confirmation hearing. Close quote. That's on top of the e-mail, as you just referred to. If they had signed up for electronic notice, would they have seen the motion? Yes, sir. They would have, because it was filed in the court record the very moment, obviously the day before the confirmation hearing, it was in fact filed. That's a whole separate issue as to their argument about fundamental fairness when they assert that the bankruptcy courts are court of equity, and as a result, they should get equity. Well, we all know the axiom that equity aids the vigilant and not those who sleep on their rights. Judge Kristol made several findings that they had in fact slept on their rights and did not have a lawyer in this case pre-confirmation, did not sign up for notice on PACER. Mr. Braun, one of the Pegasus Equity Holders, signed up for the confirmation hearing and then didn't show up. It was done by telephone. And there's a whole host of other issues. They didn't object to confirmation. They didn't vote. Tell me this. Yes, sir. So you heard my point. Let's assume they had standing, okay, just for understanding. Yes, sir. You disagree with that, but let's assume. Wouldn't any error be harmless? But you heard his response to that question. What do you say? Well, that is exactly our position. It would be harmless. And in fact, if you look at the relief they seek from this court, if you look at this last page of each one of his briefs, it's not to go back to the bankruptcy court to have another confirmation hearing. In fact, he doesn't even ask to have the existing confirmation order reversed. That's not part of the relief he seeks here today. So, yes, I agree with you that if they had the chance to re-vote, they would have rejected it and we take the argument. That's full circle back to where Judge Kristol was. He says the bankruptcy court couldn't have done that. Well, I disagree. The bankruptcy court, in fact, crammed down that plan on a rejecting class of creditors. They had treating them as having opposed it, right? Absolutely, because that's what bankruptcy court concluded. Under 1126G, they were deemed to have rejected the plan because they were getting nothing on account of their old equity interest. Didn't the district, didn't the bankruptcy court wrongly conclude that this was an 1126 case because it concluded that no one lost equity, whereas these, it's complicated to say, these parties had an equity interest, it seems, based on their commitment that they could receive equity in exchange for their proportion of the $500,000. They lost that in the modification. And under the bankruptcy rules, since they lost that, can a cram-down happen without any of these procedures within the class to keep them with the same interest that they had before? So the answer is yes. I mean, first off, we contest that all three of these Pegasco equity holders were actually pre-bankruptcy equity holders, but we'll put that aside a second and assume that they were. Let's assume for argument's sake that they were. The plan said that those interests, including Mr. Visayo's interests, were canceled and extinguished at confirmation. Full stop, end of story. Then in a separate transaction, new equity is being issued, not in exchange for what was just canceled, but in exchange for new money. That's a traditional way that plans of reorganization get funded. There's nothing in that plan or the disclosure statement or in anything that suggests that the new equity was being given even in part for the old equity. It just doesn't exist in the plan. There's two transactions there. And so Judge Kristol understood that. And so now he's looking at cramming down a class three equity holders that have been canceled and extinguished full stop. That's why it became a cram-down, and that's what I presented to the court, the evidence to achieve that cram-down, and Judge Kristol granted it. How can you say there's no relationship between the new equity and the old equity? It seems to me that there is a connection, giving the old equity holders an opportunity to contribute in order to gain a share of the new equity. They are certainly the same people. I'm not suggesting they're not the same people. They are, putting aside the point that we think some of them didn't have that equity. But perfect example of why there's a disconnect there. The new equity that was being issued was in a wildly different percentage than the old equity that they say they had pre-bankruptcy. If there was a connection there, they were getting new equity in exchange in part for old, the percentages respectfully would have been the same. They were not. They were wildly different. It was a negotiation that led to how much new equity for how much cash and who's putting in the cash. It wasn't tied to their pre-bankruptcy equity interest. I get it. It's the same people that are doing this. That's natural. This is a closely held company. Right, because it's tied. I mean, I don't – everything is negotiated in bankruptcy. The fact that your equity interests end up being somewhat different doesn't mean it has nothing to do with the old equity interest. They were certainly at the table because they had a pre-bankruptcy equity interest. And, in fact, Mr. Braun, I think, was an executive of the company. And so they were inside. This is no question. They were at the table because of that position. But the bankruptcy court's concern is how to make this a viable enterprise going forward. And no surprise, hey, we've got these people who've had some interest in it before. Let's give them a seat at the table and an opportunity to keep it going. That doesn't mean that giving them that opportunity is in exchange for their interest. Is that what you're saying? Well, the answer is yes, but it's not the bankruptcy court's decision. It's the decision of the debtor as to who the debtor wants to give the money. Bankruptcy court's going to ultimately have to approve it. Yes, sir, absolutely. And that's what happened here. My last comment about notice is the due process argument he's making, respectfully, is a red herring. This court, Judge Pryor's decision in the center following the Supreme Court in Espinoza, tells us what's constitutional due process. In those cases, there was a procedural rule that was violated. We don't have that here. We didn't violate Rule 3019. In those cases, there was some actual knowledge of the context of the plan. The Picasso holders had actual knowledge of the context of the plan, and they had some knowledge, not the specifics per Judge Kristol, of the motion to modify, and the e-mails that Judge Pryor read are exactly what gives rise to that. And so under LaSenta and Espinoza, there is no constitutional due process violation here. Yeah, the e-mails would at least, it seemed to me, to support a factual basis for a finding of actual notice that we would have to review for clear error. Yes, sir, I agree with that 100%. I'm going to go back to what I actually consider the core point I wanted to make to this court, but I jumped into service because that was what came up first. The threshold issue is, did the debtors have the absolute right to modify this plan to do whatever the debtors wanted to do? If you come to that conclusion, and I respectfully suggest that you have to come to that conclusion under the Bankruptcy Code, then all the other issues, all the other underbrush falls away or falls in line, depending upon what the issue is. As I said, the relief they've asked for is not to reverse the confirmation order. They want you to reverse just the modification portion of the confirmation order. And oh, by the way, that modification is embedded in the confirmation order. You can't just reverse a piece of the order. You'd have to reverse the entire thing, which they haven't asked you for. Secondly, they've asked you to void the issuance of equity and cause a reissuance of new equity to their clients. That's not what the plan is that's been confirmed. That's the old plan. There's a modified plan that was confirmed that's in place. The Bankruptcy Court had a choice, confirm that modified plan, deny that modified plan. The Bankruptcy Court didn't have the power to cause a further modification, just like respectfully this court doesn't have the power to cause another modification. Courts don't rewrite plans. Courts don't rewrite contracts. What's put before you is a justiciable issue that you decide up or down. You don't rewrite things. That's for the parties. But that's what they're asking you to do. They're saying, we don't like the new plan. We want you, judges, to give us the old plan. Well, I get it. Lots of creditors don't like plans that get confirmed. It happens every single day in the Bankruptcy Court. Think of the chaos that would happen if creditors who didn't like plans could have appellate courts rewrite those plans. It just can't happen. So I come back to Section 1127 of the Bankruptcy Code is absolutely clear. The debtor has the exclusive right to modify its plan, just like the debtor has the exclusive right to file a plan. It can say whatever we want it to say. We can modify it to say whatever we want it to say. But we have to get it confirmed. We have to meet the requirements of confirmation. And if we can't, it doesn't get confirmed. In this case, we had a reason to modify the plan. We said they didn't fund on time. I get it. They don't like that. They think they did. We can't. But that's irrelevant. If I get up on the wrong side of the bed or Mr. Versailles got up on the wrong side of the bed and decided, I don't like them anymore, I'm going to change the plan, he had every right to do that under Section 1127. And he had to confirm that plan, which is what exactly he did. Now, he had a good reason not to do it. Remember, they, as equity holders, pre-petitioned, put Mr. Versailles on charge. They said, you control this debtor. You make all the decisions on behalf of this debtor. He did. When he concluded that they weren't going to fund, he funded, and he made that decision. He has every right, the debtor has every right to do that, every right to modify that plan. It's in their exclusive province to do so. So the relief they asked from you today would actually violate Section 1127 because they say we don't have the right to modify a plan. We do. And we did. And it was confirmed. You're saying that he had a different interest than the other entities in his class? He had a pre-petition equity interest. Didn't they, too? I say some of them did. For this assumption, they all did. Let's assume they all did. That's not something I believe that you raised before us, right? I did. I raised the fact that not all of the Pegaso equity holders were pre-bankers. You haven't made that part of your argument for what we're trying to decide, right? For purposes of today, that's correct. Because in the reply brief, they've raised some potential factual issue that, in fact, they might have been all pre-bankers of the equity interest. So I'm going to take it off the table because I don't think it's relevant to the ultimate conclusion. I'm sorry. I cut you off. No, no. So I think you were answering my question. Before, he had an interest, an equity interest, and so did, for purposes of this conversation, so did other entities, right? Yes, Judge. Are you saying that he had a superior interest to them? No, he did not. So why is it that he can decide who has all of the subsequent ownership interests? Because he was the chief executive officer of these corporations. And in the pre-bankruptcy corporate resolutions that were signed by the Pegaso equity holders, they gave him full control to make all decisions during the bankruptcy case on behalf of the debtors. So that's what I was trying to ask. You're saying that their corporate structure gave him the ability to make these decisions for all of the equity holders in the class? On behalf of the debtor, which would affect all the equity holders in the class, yes. That's exactly what I'm saying. And the corporate resolutions say exactly that. And that's why when Judge Pryor read in the email, they were trying to take some of that away from him, but they didn't do it, saying we object to any instructions that Mr. Visayo gives. That's not the proper way to take corporate authority away from a chief executive officer. Is the proper way to exercise your corporate authority to cut your fellow equity holders out of the deal that was agreed upon? That's a loaded question. And I appreciate that. The bottom line, but, but the answer is he made a decision that when they didn't fund their money on that Friday, that they hadn't complied that they hadn't complied.  They suggest that that that deadline was arbitrary. In fact, invented Judge Crystal ordered that deadline. We've pointed out that in the disclosure statement order, Judge Crystal said, Batista filed this report on this date, May 25th holiday or not. I make it a habit of complying with court orders. And they did that. I comply with that court order and I filed that report. And I told all of them, I need the money. I can't tell Judge Crystal on May 25th. I don't have the money. Now, some of the backstory here is that happened at Judge Crystal a long time ago. Someone filed that report, didn't have the money. And Judge Crystal was not very happy about that. So I knew if I didn't have the money in my account to write that report on that, that holiday, the confirmation was not going to go forward. And that's why Mr. Faisal stepped up and put that money in, which is what we, we taught, I told this to the bankruptcy court at the confirmation of exactly what happened and why I did what we did. Judge Crystal in his modific in his order denying modification specifically says that was a deadline. I Judge Crystal imposed and I did it because I wanted to make sure the money was in Batista's trust account to suggest that that's invented or arbitrary is fanciful. In fact, your decisions of this court, you've said when a bankruptcy judge is interpreting one of his own orders, which is exactly what we have here, that's, that's a, a, an abusive discretion standard. And so Judge Crystal said to eliminate this issue of arbitrary deadline, I set, I Judge Crystal set that deadline, not anybody else. It wasn't invented. So back to the answer, your question, when that didn't happen, when they didn't fund their money, he got concerned. We have a, a, a fairly large operating business here that he was a CEO of. And you can imagine there's lots of discussions going on in the, in the, in behind the scenes between these equity holders, they didn't come up with the money when they should have. And so he did. And he directed me to modify the plan, which is exactly what we did. I hope the answer is your question. And I'm out of time. Good timing. Thank you again. Well, thank you, Mr. Batista, Mr. Columbus, you've saved three minutes. Thank you, your honors. I'd like to make three points quickly. The first is Mr. Batista has described an absolute right that the debtors have to modify the plan. That is true. If proper disclosure and research solicitation of votes is provided, they didn't do that and proceeded instead under the shortcut provided by rule 3019. That means that they had to satisfy the condition in 3019 for not providing disclosure. That condition is that the bankruptcy court find that no creditors and no equity interest holders would be adversely affected by the change. As an initial matter, the district court or the bankruptcy court did not make such a finding with regard to the equity holders. And our position is that it couldn't possibly have found that the change adverse didn't adversely affect them. It clearly did. So the statement from Mr. Batista, there's an absolute right to modify has to be qualified by there's a right to modify if the statutory and procedural requirements of the code and the rules are followed. What do you say about what he says about the, the relief you're actually requesting? That was my second point, your honor. So we, we have asked for we, what we thought was the least invasive relief, which is just to redistribute the equity pursuant to the original plan. That's so that you don't have to unwind. It sounds like he he's got your description of what you want. Exactly right. That's right. The alternative relief that we've requested in the conclusion of both briefs is that if, if there's further fact finding or further proceedings required that the  with this court's orders, that would involve first of all, redisclosure, your honor, and a, and a revote on this issue, but it would also involve a new hearing where we would raise all of these points lead to the same exact outcome. No, wouldn't your honor, because we would be there to, to argue this deadline issue where we would be there to argue that the plant plan could not be confirmed as modified because since the deadlines were met, it treated class members within class three differently. And the cram downs requirements couldn't be met. So that's why this does matter and why it's not harmless error that was committed here. The last point I would, I just want to leave the court with is the deadline issue. If the court looks at the disclosure order that the bankruptcy court issued, you will not see anywhere in that disclosure order, a specific requirement to, to push up the funding deadline. It doesn't exist. What the debtors relied on was a statement in the disclosure order that said that the certifications by the debtors had to be filed using the local forms, the Southern district of Florida, local forms. Those forms do not require the debtors to certify that they're holding the money in hand. So even under the disclosure statement order, there was no notice to the Pegaso equity holders that they needed to fund before the deadline set out in the plans. Thank you very much, your honors. Thank you, Mr. Columbus. We'll be in recess until tomorrow.